**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

|  |  |
|---|---|
| **RICHARD BERNARD MOORE,** | No._____ |
| *Plaintiff,* | |
| v. | **DEATH PENALTY CASE**<br>**Execution date: April 29, 2022** |
| **BRYAN P. STIRLING**, in his official capacity as the Director of the South Carolina Department of Corrections, | |
| **SOUTH CAROLINA DEPARTMENT OF CORRECTIONS**, | COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT |
| and | |
| **HENRY D. MCMASTER**, in his official capacity as the Governor of South Carolina, | |
| *Defendants.* | |

_____

## INTRODUCTION AND OVERVIEW

1.      Plaintiff Richard Bernard Moore is scheduled to be executed on **Friday, April 29, 2022 at 6:00 P.M.** Pursuant to South Carolina's newly enacted statute (S.C. Code Ann. § 24-3-530 (2021)), Defendants intend to execute Plaintiff by electrocution or firing squad because lethal injection is "unavailable." This is a civil action for declaratory and injunctive relief brought by Plaintiff for violations and threatened violations of their rights pursuant to the Eighth and

Fourteenth Amendments to the United States Constitution prohibiting cruel and unusual punishments. Plaintiff would respectfully show the Court as follows:

2.    Death penalty jurisdictions have almost uniformly turned away from electrocution because of "its specter of excruciating pain and its certainty of cooked brains and blistered bodies." *See Dawson v. State*, 554 S.E.2d 137, 144 (2001); *see also State v. Mata*, 745 N.W.2d 229, 269–78 (2008) (detailing the horrors of electrocutions). The firing squad has similarly disappeared from American jurisdictions: Since the reinstatement of the death penalty in 1976, there have been only three firing squad executions in the United States, all in Utah. By compelling Plaintiff to die in their century-old electric chair or by three bullets to the heart, Defendants subject him to a substantial risk of excruciating pain, terror, and certain bodily mutilation that contravenes evolving standards of decency, offends basic principles of human dignity, and violates and the Eighth Amendment's prohibition on cruel and unusual punishment. Contrary to Defendants' assertions, lethal injection is a readily available alternative that would significantly reduce the risk posed by the electric chair or the firing squad. This Court should declare electrocution and firing squad unconstitutional and permanently enjoin Defendants from executing Plaintiff by either method.

3.    Lethal injection is the primary method of execution in every jurisdiction that retains the death penalty in the United States and had been South Carolina's primary method of execution since it was adopted on June 8, 1995. South Carolina made lethal injection the default method of execution because it is "more humane than dying in the electric chair." *Legislative Watch: Death Penalty*, The Times & Democrat (Orangeburg, S.C.), Mar. 2, 1985, at 2B.[1] Thus, at the time of

---

[1] Of the nation's 1,533 executions since 1976, nearly 90% (1,350) have been by lethal injection. *Execution Database*, Death Penalty Information Center, https://deathpenaltyinfo.org/executions/execution-database (last visited May 25, 2021, as were all other websites visited). In the same period, only 163 executions have been by electrocution, with more than 140 of these occurring in the 70s, 80s, and 90s. *Id*. Three people have been executed by firing squad, equal to the number of people hanged. *Id*.

Plaintiff's crime in 1999 and sentencing in 2001, South Carolina law provided that his execution would be carried out by lethal injection, unless he affirmatively selected electrocution or lethal injection was found by a court to be unconstitutional. *See* S.C. Code Ann. § 24-3-530 (1995).

## I.
## JURISDICTION

4.      Jurisdiction of this matter arises under 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, and 28 U.S.C. § 2202.

## II.
## NATURE OF ACTION

5.      This is a civil action for declaratory and injunctive relief brought by Plaintiff for violations and threatened violations of his rights pursuant to the Eighth Amendment to the United States Constitution.

6.      Plaintiff is a death-sentenced prisoner who has completed the ordinary appeals process and whose crime and sentencing occurred before the May 2021 change to South Carolina's execution law. *See Moore v. Stirling*, No. 20-5570, 2020 WL 6385899 (U.S. Nov. 2, 2020); *see also* S.C. Code Ann. § 24-3-530 (2021) (amending the statute to allow for firing squad executions and making electrocution, instead of lethal injection, the default method of execution). Defendants Stirling and the South Carolina Department of Corrections (SCDC) are the individual and agency charged by state law with carrying out Plaintiff's execution. Defendant Henry McMaster signed into law the May 2021 amendment to South Carolina's execution law.

7.      In November 2020, Plaintiff received a warrant for his execution pursuant to *In Re Stays of Execution in Capital Cases*, 471 S.E. 2d 140 (S.C. 1996). His execution was scheduled for December 4, 2020. Under controlling law, Plaintiff was set to die by lethal injection. *See* S.C. Code Ann. § 24-3-530 (1995). Subsequently, Defendants SCDC notified the South Carolina

Supreme Court that it did not have, and would not be able to obtain, the drugs required for execution by lethal injection by Plaintiff's execution date, and the South Carolina Supreme Court stayed Plaintiff's execution on November 30, 2020. In the interim, the General Assembly amended the statute to bypass Plaintiff's right to die by lethal injection, *see id*. § 24-3-530 (2021), and Plaintiff petitioned the South Carolina Supreme Court for habeas relief. On April 6, 2022, the South Carolina Supreme Court denied Plaintiff habeas relief. *Moore v. Stirling*, Op. No. 28088 (S.C. Apr. 6, 2022). On April 7, 2022, the Clerk issued a notice of execution, setting Moore's execution for April 29, 2022. Execution Notice, attached as Exhibit A. Defendants now seek to execute Plaintiff either by electric chair or firing squad. *See* Stirling Certification Affidavit dated April 8, 2022, attached as Exhibit B.

8.      Electrocution and firing squad violate Plaintiff's constitutional right to be free from cruel and unusual punishment. Plaintiff seeks a permanent injunction preventing Defendants from carrying out his execution by either electrocution or firing squad and a declaratory judgment that electrocution and the firing squad violate the Eighth Amendment.

### III.
### PARTIES

9.      Plaintiff Richard Bernard Moore is a citizen of South Carolina under a sentence of death and in the custody of Defendant SCDC, which is led by Defendant Stirling. Plaintiff is incarcerated at the Edisto Unit of Broad River Correctional Institution (BRCI) in Columbia, South Carolina. Unless this Court grants injunctive relief, Plaintiff will be executed at BRCI on April 29, 2022.

10.     Defendant SCDC is the state agency in South Carolina charged with overseeing the custody and care of individuals incarcerated in South Carolina. It is also charged with carrying out

and providing equipment for executions. S.C. Code Ann. § 24-3-520, § 24-3-540. SCDC's headquarters are in Columbia, South Carolina.

11.    Defendant Bryan P. Stirling is the Director of SCDC and is a citizen and resident of South Carolina. He is charged with overseeing and carrying out executions in South Carolina. *See id*. § 24-3-510. He is the final executive authority responsible for carrying out sentences of death against South Carolina prisoners. Defendant Stirling is sued in his official capacity for the purpose of obtaining declaratory and injunctive relief.

12.    Defendant Henry McMaster is the Governor of South Carolina and is a citizen and resident of South Carolina. He has the power to approve legislation and duty to ensure laws are faithfully executed. S.C. Const. art. IV, §§ 15, 21. McMaster is sued in his official capacity for the purpose of obtaining declaratory and injunctive relief.

13.    Defendants are acting in their respective official capacities with respect to all acts described herein, and their actions are under the color and authority of South Carolina law. Upon information and belief, unless preliminarily and permanently enjoined, each Defendant intends to act in his or her official capacity and under the authority of state law to execute Plaintiff in the electric chair in violation of his constitutional rights.

## IV.
## FACTS

1.    Plaintiff was sentenced to death in Spartanburg County in 2001 for a crime that occurred in 1999. At the time of Plaintiff's crime and sentencing hearing, South Carolina law provided that his death sentence would be carried out by lethal injection, unless Plaintiff selected electrocution or an appellate court held that lethal injection was unconstitutional. *See* S.C. Code Ann. § 24-3-530 (1995).

- 4 -

2.      On May 14, 2021, the legislature amended the statutory provision that governs executions, making electrocution the default method of execution and adding the firing squad as a third authorized method of execution, along with lethal injection, that the prisoner could elect if "available." S.C. Code Ann. § 24-3-530 (death-sentenced prisoner "shall suffer the penalty by electrocution or, at the election of the convicted person, by firing squad or lethal injection, if it is available at the time of election").

3.      The statute requires the Director of SCDC to "determine and certify by affidavit" which of the three methods are "available," but does not specify when that certification must occur. S.C. Code Ann. § 24-3-530(B) (2021). The prisoner, however, must select a method fourteen days before his execution; otherwise, he waives his right to select and will be executed by electrocution. *Id*. § 24-3-530(A), (B).

4.      Following the law's enactment, Defendants notified the Supreme Court of South Carolina that they could carry out executions by electrocution. The Clerk of the Supreme Court of South Carolina subsequently set execution dates for both death-sentenced inmates Freddie Owens and Brad Sigmon. On June 4, 2021, the Supreme Court of South Carolina asked Defendant Stirling to explain why only one method of execution was available. Defendant Stirling certified to the Supreme Court that electrocution was the only available method of execution because Defendants had not yet developed a firing squad protocol and they could not find someone to sell them lethal injection drugs. Defendants proceeded as if they would carry out Plaintiffs' executions by electrocution.

5.      On June 16, 2001, the Supreme Court of South Carolina stayed Owens's and Sigmon's executions. The Court held: "Under these circumstances, in which only a single method of execution is available, and due to the statutory right of inmates to elect the manner of their

execution, we vacate the execution notice." Order, *State v. Owens*, No. 2006-038802 (S.C. June 16, 2021); Order, *State v. Sigmon*, No. 2002-024388 (S.C. June 16, 2021) (attached to this Complaint as Exhibit C). The Court directed the Clerk not to issue another execution notice until, "in addition to maintaining the availability of electrocution, [SCDC] has developed and implemented appropriate protocols and policies to carry out executions by firing squad." *Id*.

6.    On March 18, 2022, Defendants notified the Supreme Court of South Carolina that they have finished developing their firing squad protocol. Firing Squad Notification Letter dated March 18, 2022, attached as Exhibit D.

7.    On April 6, 2022, the Supreme Court of South Carolina denied Moore's Petition for Writ of Habeas Corpus and denied Moore's request for a stay of execution based on the petition. On April 7, 2022, Supreme Court of South Carolina issued an execution notice in Moore's case setting his execution for Friday April 29, 2022. On April 8, 2022, Defendant Stirling certified that "the only statutorily approved methods of execution available to the Department are electrocution and firing squad." Ex. B.

**Overview of South Carolina's Statutory Methods of Execution**

8.    With the 2021 amendments, South Carolina became the only jurisdiction in the United States where electrocution is the primary method of execution. Only eight states authorize the use of the electric chair as even an alternative method. With the 2021 amendments, South Carolina became only the fourth jurisdiction in the United States where firing squad is a statutorily authorized method of execution. As the chart on the following page illustrates, among those American jurisdictions that authorize the death penalty, South Carolina's statute is an anomaly in every regard:

| Method | Count of jurisdictions - primary method | Count of jurisdictions - alternate method | Jurisdictions |
|--------|------|------|------|
| Lethal injection | 28 | 1 | *Primary method*: Alabama, Arizona, Arkansas, California, Florida, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Nevada, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Wyoming, U.S. military, U.S. government<br>*Alternate method*: **South Carolina** |
| Electrocution | 1 | 7 | *Primary method*: **South Carolina**<br>*Alternate method*: Alabama, Arkansas, Florida, Kentucky, Mississippi, Oklahoma, Tennessee |
| Firing squad | 0 | 4 | *Alternate method*: Mississippi, Oklahoma, Utah, **South Carolina** |

9.      Since 1976, executions in the United States have been carried out by the following methods:

| Method | # of executions | Percent of total |
|--------|------|------|
| Lethal injection | 1,354 | 88.27% |
| Electrocution | 163 | 10.63% |
| Gas chamber | 11 | 0.72% |
| Hanging | 3 | 0.20% |
| Firing squad | 3 | 0.20% |
| *Total* | *1,534* | |

10.     In 2013, Defendants began publicly asserting that lethal injection is not an available method of execution in South Carolina because they could not obtain the necessary drugs. Over that same period, thirteen states and the federal government have carried out 208 executions by lethal injection. Additionally, since January 2020, four states and the federal government have carried out twenty-one executions by lethal injection.

### *Details of execution by electrocution*

11.     South Carolina is now the only jurisdiction in the world where a person could be executed by electrocution even if he did not select that method. Internationally, far fewer

executions have been carried out by electrocution in the past decade than have been carried out by hanging or beheading.

12.    On information and belief, any executions by electrocution in South Carolina will be accomplished in the same electric chair that the State first purchased in 1912, using the same essential process the State has used over the last 100-plus years.

13.    The last execution in South Carolina's electric chair took place in 2008, and the inmate executed selected that method. South Carolina last forced a prisoner to die by electrocution in 1991.

14.    Death in the electric chair is torturous. Electrocution produces various physiological reactions: burning and charring of the skin; thermal heating, i.e., cooking of the body and internal organs; direct excitation of sensory, motor, secretory, and autonomic nerves; direct excitation of brain nerves, causing sensations of sound, light, dread, and fear; simultaneous contractions in the flexor and extensor muscles (e.g., the hamstring muscle on the back of the thigh and the quadriceps muscle on the front of the thigh at the same time); contraction of the muscles necessary for breathing, preventing the person from inhaling or exhaling and causing the person to suffocate. All of these reactions cause extreme pain. John P. Wikswo, Jr. Aff. ¶ 12 (attached to this Complaint as Exhibit E); Jonathan L. Arden Aff. ¶¶ 9–11, 14 (attached to this Complaint as Exhibit F).

15.    A person executed by electrocution will remain conscious and sensate during an electrocution until he loses consciousness. Electrocution causes loss of consciousness by terminating brain functioning, which occurs through either: "(1) a direct electrical stimulation of the neurons in the brain; or (2) insufficient blood circulation to the brain due to cardiac asystole, shock entrainment, fibrillation, or asphyxia due to either cardiac or respiratory arrest." John P.

Wikswo, Jr. Aff. at ¶ 12(b)(i). Both processes take time. Accordingly, a person subjected to the electric chair will remain conscious and sensate. *Id*. at ¶ 12, 14. Because a person subjected to death in the electric chair can remain alive, conscious, and sensate during the electrocution, there is a significant likelihood of excruciating pain during the event.

16.     Death in the electric chair also produces needless and wanton psychological suffering. During the electrocution process, the condemned person's perception of time may become distorted, causing them to experience the electrical trauma as lasting dramatically longer than it appears to a bystander and causing him to perceive each of the sixty cycles of electrical current that will pass through his body every second. When an electrical current directly excites brain nerves, it can trigger sensations of sound, light, dread, and fear. And because Defendants tightly strap condemned people into the electric chair and cover their faces with a leather hood, they are unable to signal when they are experiencing pain or suffering. John P. Wikswo, Jr. Aff. ¶ 12.

17.     On information and belief, the procedures Defendants use to carry out executions by electrocution are not precise. The amount of electrical current delivered to an object varies directly with the voltage applied and inversely with the resistance of the object to which the current is applied. Human bodies have varying resistance levels, depending on their size, composition, and the amount of sweat present on the surface of their skin. As a result, the amount of electrical current necessary to stop a condemned person's vital organs from functioning depends on that person's particular characteristics, and the length of a time any given individual will remain alive, conscious, and sensate during an electrocution is unpredictable and variable. *Id*. at ¶ 12(d).

18.     There is evidence that at least thirty percent of those prisoners Defendants have executed in the electric chair since 1912 experienced excruciating pain and suffering. *Id*. ¶ 13.

Specifically, in at least thirty percent of electrocutions in South Carolina's history, one or more of the following occurred: the prisoner's body was subjected to smoke or fire; the electric chair or apparatus emitted sparks; more than one shock was necessary to stop the prisoner's heart; and the prisoner experienced violent involuntary muscle contractions.

19.    Of the seven prisoners Defendants have executed in the electric chair since 1985, there is evidence that at least five suffered excruciating pain.[2]

20.    These estimates are almost certainly a significant undercount of the true totals because reliable witness accounts do not exist for most of the executions by electrocution, and a person executed in the electric chair cannot signal when he is experiencing pain or suffering.

21.    Evidence from other states confirms that death in the electric chair is torturous. Two states have declared it unconstitutional.  The Supreme Court of Nebraska held that "electrocution will unquestionably inflict intolerable pain unnecessary to cause death in enough executions so as to present a substantial risk that any prisoner will suffer unnecessary and wanton pain in a judicial execution by electrocution." *State v. Mata*, 745 N.W.2d 229, 278 (2008). The Supreme Court of Georgia reached the same conclusion. *Dawson v. State*, 554 S.E.2d 137 (Ga. 2001). *See also Glass v. Louisiana*, 471 U.S. 1080, 1087–88 (1985) (Brennan, J., dissenting from the denial of certiorari) (describing various problems with the electric chair, including the likelihood that a prisoner will catch fire or otherwise be mutilated by electrocution).

---

[2] The five men whose executions went awry were: Pee Wee Gaskins (required three shocks before his heart stopped and witnesses observed him convulsing and his muscles violently contracting), Larry Eugene Bell (required three shocks before his heart stopped), Joseph Carl Shaw (witnesses observed smoke rising from Shaw's pants and saw him violently convulse approximately a dozen times), James Neil Tucker (required three shocks for his heart to stop and witnesses noted that he experienced violent, involuntary muscle contractions), and Ronald Woomer (required three shocks for his heart to stop).

22.    Willie Francis, perhaps the only person to live long enough after an attempted electrocution to give a first-hand account, described the feeling of being electrocuted as "a hundred and a thousand needles and pins were pricking in me all over and my left leg felt like somebody was cutting it with a razor blade." Deborah Denno, *When Willie Francis Died: The "Disturbing" Story Behind One of the Eighth Amendment's Most Enduring Standards of Risk*, *in* DEATH PENALTY STORIES 43–44 (John H. Blume & Jordan M. Steiker eds., 2009). At one point, Francis could no longer tell whether he was alive or dead. He realized he was alive when the executioners administered another surge of electricity, subjecting him to "the needles and pins" once more.

23.    In 1983, it took Alabama fourteen minutes and three attempts to execute John Evans in the electric chair. After prison officials applied the first burst of 1900 volts, smoke and sparks poured from under the hood covering Evans's face and the room filled with the smell of burning flesh and clothing; prison doctors then determined that Evans was still alive. *Glass*, 471 U.S. at 1091–92 (Brennan, J., dissenting from denial of certiorari). Prison officials applied a second burst of electricity for another thirty seconds, and more smoke filled the room, along with the increasingly sickening smell of burning flesh, but again doctors determined that Evans was not dead. It was only after prison officials had applied a third jolt of electricity that prison doctors declared him dead. *Id.*

24.    In 1990, it took Virginia executioners more than five minutes to electrocute Wilbert Lee Evans. During the execution, Evans bled so profusely that his shirt became soaked in blood. Deenan L. Brown, *Execution Probe Sought*, WASH. POST, Oct. 21, 1990, at B1.

25.    That same year, Florida officials attempted to electrocute Jesse Tafero for seven minutes. ELLEN MCGARRAHAN, TWO TRUTHS AND A LIE: A MURDER, PRIVATE INVESTIGATOR, AND HER SEARCH FOR JUSTICE xvii (2021). After applying three separate cycles of electricity at

2,000 volts, Tafero appeared to still be alive. Mike Clary, *Flames Erupt in Electric Chair's Death Jolt*, L.A. TIMES, Mar. 26, 1997, at A1. As spectators watched, "the headset bolted onto his bare scalp caught fire. Flames blazed from his head, arching bright orange with tails of dark smoke. A gigantic buzzing sound filled the chamber." MCGARRAHAN, TWO TRUTHS at xvii. Throughout the execution, Tafero's chest heaved, his head nodded, and even after he was engulfed in flames, he continued to sigh. *Id.*

26.    Although Virginia prison officials rewired their electric chair in the wake of Wilbert Lee Evans's torturous death, it nevertheless took two attempts for them to kill Derick Peterson in 1991. Karen Haywood, *Convicted Killer Executed in Virginia, But Only on Second Try*, AP NEWS, August 23, 1991, https://wr.perma-archives.org/public/a7d5-slcw/im_/https://apnews.com/article/77b06f17fdeb31c1c23347adc150a3a5.

27.    In 1998, Florida attempted to execute Pedro Medina in the electric chair. As with Tafero, Medina caught on fire. Medina lurched backwards and balled his hands as blue and orange flames up to a foot long shot from the right side of his head. One witness recalled that the execution was "brutal, terrible. It was a burning alive, literally." Ron Wood, *Flames Erupt from Man's Face Mask During Death Sentence Electrocution*, AP NEWS, March 25, 1997, https://wr.perma-archives.org/public/fr45vjzr/im_/https://apnews.com/article/ae9d4a0e21a72803fe299daac7850440. The smell of burnt flesh lingered as the witnesses left. *Id.*

28.    Upon information and belief, there are numerous other examples of botched electrocutions in recent American history.

29.    If Defendants are permitted to carry out Plaintiff's execution in the electric chair, there is a near certainty that he will suffer a torturous, terrifying death.

### *Details of execution by firing squad*

30.     The firing squad has been, and continues to be, rarely used as a method of execution in America. It never gained much traction in any relevant time-period, and it has, until this year, never been a legally authorized method of execution in South Carolina.

31.     Internationally, the firing squad is used only in China, North Korea, and other countries in Asia and the Middle East. In recent years, it has fallen out of favor even in those countries and has, for the most part, been replaced by lethal injection. South Carolina is therefore one of the few jurisdictions in the world where a person can be killed by firing squad.

32.     In the United States prior to 1789, there were only thirty firing squad executions recorded.  Many were in Louisiana and California, both territories of foreign governments (France and Spain). While the military long preferred the firing squad as a method of execution, there have been only 144 shooting executions of civilians in the nation's history (out of approximately 16,000 total documented executions). Espy. M. Watt & John O. Smykla, *Executions in the United States. 1608-2002* ("The Espy File"), https://perma.cc/CUT5-RP25; DEATH PENALTY INFORMATION CENTER, *Execution Database*, https://perma.cc/6R4K-RZM6 (last visited Aug. 25, 2021). That means that less than one percent of all executions in the United States have been carried out by having citizens shoot and kill other citizens.

33.     In the pre-modern and modern eras of capital punishment in this country, the firing squad has virtually disappeared. It has only been used 34 times since 1900, making up less than half of one percent of all American executions in the past one-hundred and twenty years.

34.     All but one of those firing squad executions took place in Utah. The sole exception, Andrija Mirkovitch, was shot to death in Nevada in 1920. Christopher Q. Cutler, *Nothing Less*

*than the Dignity of Man: Evolving Standards, Botched Executions and the Utah's Controversial Use of the Firing Squad*, 50 CLEV. ST. L. REV. 335, 400 (2003).

35.    Since the reinstatement of the death penalty in 1976, there have been only three firing squad executions in the United States, all of which took place in Utah.[3] Only three other states—Oklahoma, Mississippi, and Utah—currently authorize the use of the firing squad.[4]

36.    Consequently, the Supreme Court of the United States has not addressed whether execution by firing squad is a constitutional method of punishment since 1878—nearly 100 years before the Eighth Amendment was incorporated and applied to the states in *Robinson v. California*, 370 US 662 (1962). *See Wilkerson v. Utah*, 99 U.S. 130 (1878). The Supreme Court, reviewing the execution order of a territorial court in Utah, ultimately determined that execution by firing squad was not cruel and unusual punishment, relying primarily on the military's use of the firing squad and its own opinion that firing squad involves less pain and is more dignified than hanging. *Id.* at 133.

37.    Execution by firing squad is typically conducted by "multiple people simultaneously firing rifles at a target approximately overlying the heart of the prisoner," inflicting "multiple, concurrent rifle wounds to the heart and surrounding structures" and causing "severe disruption and destruction of bodily tissues." Jonathan L. Arden Aff. ¶ 20. The "[m]ultiple rifle wounds to the chest will cause extensive damage to the skin and chest wall soft tissues" and "multiple fractures of the ribs and sternum," which would be "excruciatingly painful per se, and even more so upon any movement, such as flinching, or trying to breathe." *Id.* at ¶24. The autopsy

---

[3] Most firing squad executions overall throughout our nation's history have taken place in Utah. This is in large part due to the Mormon doctrine of "blood atonement," i.e., that a murderer must literally shed his blood to obtain divine forgiveness.

[4] From 1982 to 2009, Idaho had a firing squad alternative to lethal injection if lethal injection was "impractical," but it was never used.

photographs from the last firing squad execution in the United States—that of Ronnie Lee Gardner in 2010 at Utah State Prison, filed with this complaint as appendices to Exhibit F—reveal that the bullets that struck Gardner created an enormous hole in his chest, soaked his clothing with blood, and destroyed his corpse for the purposes of funerary proceedings.

38.     "The mechanism of death by firing squad is disruption of the heart, resulting in cessation of circulation of blood to the vital organs." Jonathan L. Arden Aff. ¶21. But even this "[a]brupt cessation of circulation…does not cause immediate unconsciousness." *Id.* at ¶¶ 22–24. According to Dr. Jonathan Arden, an experienced forensic pathologist, even if all bullets hit the intended target and effectively destroy the heart, there is enough blood left in the brain for the individual to survive for 10-15 seconds and be conscious and able to feel pain. *Id.* During that period, the prisoner would suffer "excruciating pain" from the massive trauma to his bones and tissue caused by the executioners' bullets.

39.     Accordingly, execution by firing squad is significantly more painful than execution by lethal injection. As one of the State's experts in ongoing litigation in Nevada has opined, because the firing squad brings about death "without the use of any medication that would render the individual unconscious, sedate, or in a state of anesthesia, the timeframe between when the individual is shot until death would result in incomparable pain when compared to" death by lethal injection. Complaint, Exhibit G – Declaration of Jeffrey D. Petersohn, M.D., at ¶ 48, *Floyd v. Daniels*, No. 3:21-cv-00176-RFB-CLB (No. 108-6) (D. Nev. June 24, 2021). According to Dr. Petersohn, although the firing squad can result in a quick death if the bullets hit the intended target, "there are many medical case reports detailing bullets passing through the skull without causing loss of consciousness." *Id.* at ¶ 49.

40.     Executions by firing squad have also been botched. For example, on the day of his execution, Wallace Wilkerson reportedly flinched at the "fire" command. The sharpshooters missed, hitting only his arm and torso (but not his heart). It took almost half an hour for Wilkerson to bleed to death in front of a group of horrified spectators. All the while, Wilkerson lay on the ground screaming "My God! My God! They've missed it!" Christopher Q. Cutler, *Nothing Less than the Dignity of Man: Evolving Standards, Botched Executions and Utah's Controversial Use of the Firing Squad*, 50 CLEV. ST. L. REV. 355, 346–47 (2002-2003).

41.     Utah botched another execution by firing squad in 1951. The entire squad missed Eliseo Mares' heart, hitting him instead in the hip and abdomen. Like Wilkerson, Mares slowly bled to death. *Id*.

42.     The last firing squad execution in the United States was that of Ronnie Lee Gardner in 2010 at Utah State Prison. Per the Utah protocol, five anonymous executioners fired at Gardner's chest from approximately twenty feet, aiming at a target pinned over his heart by a physician. One of the rifles contained a blank, however, for the alleged purpose of relieving any single member of the firing squad from experiencing any personal guilt for participating in a homicide.

43.     The firing squad also involves more active human participation in the act of killing citizens than lethal injection, or even electrocution. While there is some human involvement in all methods of execution—*i.e.*, the flipping of a switch or the plunging of a syringe—execution by firing squad involves several people volunteering to take aim at another human being's heart, and on command, shoot that person to death. This is a more brutal method of taking life than execution by lethal injection.

44.     Plaintiff will likely identify other constitutional defects and risks in South Carolina's proposed firing squad procedures when the protocol is disclosed.

*Details of execution by lethal injection*

45.    Lethal injection is by far the most prevalent method of execution in the United States. American jurisdictions have settled on lethal injection as the most humane method of execution after a 100-plus year history of searching for humane methods of execution. Until South Carolina's recent amendment, every death penalty jurisdiction in the country used lethal injection as its primary method of execution.

46.    Of the nation's 1,533 executions since 1976, nearly 90 % (1,353) of them have been carried out by lethal injection. DEATH PENALTY INFORMATION CENTER, *Execution Database*. In the same period, only 163 executions have been by electrocution, with more than 140 of these occurring in the 70s, 80s, and 90s, and, as noted supra, only three executions by firing squad. *Id*.

47.    When carried out properly, lethal injection can largely eliminate the risk of pain that comes with other methods of execution. *Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020). As a result, there is a "consensus among the States and the Federal Government that lethal injection is the most humane method of execution." *Workman v. Bredesen*, 486 F.3d 896, 907 (6th Cir. 2007)

48.    Indeed, lethal injection is a "proven alternative method" with a "track record of successful use." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1130 (2019).

49.    As of now, the most reliable and humane way to conduct a lethal injection is by a single dose of pentobarbital.

50.    Pentobarbital has "been adopted by five of the small number of States that currently implement the death penalty." *Lee*, 140 S. Ct. at 2591. It has been used in "over 100 executions, without incident," and it has been "repeatedly invoked by prisoners as a less painful and risky alternative to the lethal injection protocols of other jurisdictions." *Id*.

51.     Capital punishment by a single dose of pentobarbital has been approved twice by the Supreme Court of the United States. *Id*.; *Bucklew*, 139 S. Ct. 1112. And it has repeatedly been upheld by United States Courts of Appeals. *See, e.g., Whitaker v. Collier*, 862 F. 3d 490 (5th Cir. 2017); *Zink v. Lombardi*, 783 F. 3d 1089 (8th Cir. 2015); *Gissendaner v. Commissioner*, 779 F. 3d 1275 (11th Cir. 2015).

52.     Indeed, fourteen states (including South Carolina) have used pentobarbital to carry out executions: Alabama, Alabama, Arizona, Delaware, Florida, Georgia, Idaho, Mississippi, Missouri, Ohio, Oklahoma, South Carolina, South Dakota, Texas, and Virginia. DEATH PENALTY INFORMATION CENTER, *Overview of Lethal Injection Protocols*, https://deathpenaltyinfo.org/executions/lethal-injection/overview-of-lethal-injection-protocols (last visited Aug. 25, 2021).

53.     Since January 2020, five American jurisdictions carried out more than twenty executions using a single dose of pentobarbital. *Id.* Five additional states have plans to use pentobarbital: Kentucky, Louisiana, Montana, North Carolina, and Tennessee. *Id.*

54.     Also in the last year, Arizona has secured a new batch of pentobarbital. Jacques Billeaud, *Arizona finds death penalty drug after hiatus in executions*, AP NEWS, Mar. 5, 2021, https://apnews.com/article/arizona-phoenix-executions-6f0ce846e174119635509e0c16b9ac1d.

## CLAIMS FOR RELIEF

### Count I: Electrocution and the Firing Squad are Cruel and Unusual Punishments Prohibited by the Eighth Amendment to the Constitution of the United States

55.     Plaintiff realleges and incorporates herein by reference all preceding paragraphs of this complaint as if set forth in full below.

56.     The Eighth Amendment forbids states from carrying out executions by a method that "superadds pain to the death sentence" beyond what is necessary to extinguish life. *Bucklew*,

139 S. Ct. at 1125. Specifically, "[p]unishments are cruel when they involve torture or a lingering death . . . something more than the mere extinguishment of life." *In re Kemmler*, 136 U.S. 436, 447 (1890).

57.    To prevail on a claim that a specific method of execution violates the Eighth Amendment, a plaintiff must make two showings: (1) that the challenged protocol "creates a demonstrated risk of severe pain;" and, (2) "that the risk [of severe pain] is substantial when compared to the known and available alternatives." *Glossip v. Gross*, 576 U.S. 863, 878–79 (2015).

58.    Electrocution and the firing squad create a demonstrated risk of severe pain.

59.    Electrocution does not cause an instantaneous death or immediate unconsciousness. John P. Wikswo, Jr. Aff. ¶ 6. The assumption that the electric chair produces a fast and painless death is based on scientific data from more than 100 years ago, which has since been shown to be inaccurate. *See In re Kemmler*, 136 U.S. at 443–44.

60.    The last court to hold an evidentiary hearing and examine the constitutionality of the electric chair found that electrocution "will result in unnecessary pain, suffering, and torture." *Mata*, 745 N.W.2d at 277. On appeal, that finding was affirmed by the Supreme Court of Nebraska, which held that electrocution "inflicts intense pain and agonizing suffering" and therefore amounts to cruel and unusual punishment under the state constitution. *Id*. at 277–78.

61.    The firing squad does not produce instant death or unconsciousness. Jonathan L. Arden Aff. ¶¶ 9–11, 14. Even if the gunshot wounds to the chest caused immediate heart stoppage, a person will remain alive and aware for at least fifteen seconds. *Id.* at 23. During that time, the person will feel the excruciating pain from the damage to the skin, chest, and tissues, as well as any fractures to the ribs and sternum. *Id.* at 24.

62.    The risk of severe pain caused by electrocution and the firing squad is substantial when compared to lethal injection.

63.    The Supreme Court has emphasized and reemphasized that lethal injection is the most humane method of execution today. *Baze v. Rees*, 553 U.S. 35, 62 (2008); *Lee*, 140 S. Ct. at 2591. The Court has also emphasized lethal injection's widespread adoption. *Lee*, 140 S. Ct. at 2591.

64.    Additionally, when the Georgia and Nebraska Supreme Courts held the electric chair to be unconstitutional, they both emphasized that the risk of severe pain posed by electrocution was no longer worth taking because lethal injection was a less painful alternative. *Mata*, 745 N.W.2d at 263-64; *Dawson*, 554 S.E.2d at 143.

65.    When suggesting an alternative method of execution, a "prisoner may point to a well-established protocol in another State as a potentially viable option." *Bucklew*, 139 S. Ct. at 1128. States should make good-faith efforts to carry out the prisoner's suggested alternative method of execution. *See id.* at 1125.

66.    As is evident by the hundreds of lethal injection executions that have taken place in the United States in the last decade, lethal injection is a readily available alternative to the electric chair and the firing squad.

67.    On information and belief, Defendants have not made a good-faith effort to carry out Plaintiff's executions by that method.

68.    Defendants should execute Plaintiff with a single dose of pentobarbital. *See Lee*, 140 S. Ct. at 2591 (observing that a single dose of pentobarbital is "widely conceded to be able to render a person fully insensate and does not carry the risks of pain that some have associated with other lethal injection protocols" (internal quotations omitted)).

69.     Defendants could execute Plaintiff using a protocol like the one adopted by the federal government and used in thirteen lethal injections since July 2020. See 2019 Addendum to Federal Execution Protocol (attached to this Complaint as Exhibit I).[5]

70.     Electrocution and the firing squad create a demonstrated risk of severe pain that is substantial when compared to the known and available alternative of lethal injection. Executing Plaintiff by either electrocution or firing squad, when lethal injection is a readily available and statutorily authorized method in this state, would violate his rights under the Eighth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1.     Declare that execution by electrocution is unconstitutional under the federal constitution.

2.     Declare that execution by firing squad is unconstitutional under the federal constitution.

3.     Grant a permanent injunction prohibiting Defendants from carrying out, or attempting to carry out, any executions by electrocution or the firing squad unless a condemned inmate affirmatively selects that as the method of execution.

4.     Grant declaratory relief, as requested in this Complaint, to invalidate the statute as applied to Plaintiff to the extent it forces an individual to be executed by either electrocution or firing squad.

---

[5] The federal procedure calls for a first dose containing "2.5 grams of Pentobarbital Sodium in 50 mL of diluent." *Id*. at 2. When carried out appropriately, this injection quickly renders the prisoner unconscious. A second injection with the exact same solution is administered. *Id*. A third injection of 60 milliliters of saline solution is then used to flush the equipment. *Id*. The prisoner's heart is monitored throughout the execution. *Id*.

5.     Grant any further relief as the Court deems just and proper.

Respectfully submitted

Dated: April 14, 2022.                              By: s/ Lindsey S. Vann

J. Christopher Mills (Fed. ID # 4802)          Lindsey S. Vann (Fed. ID # 11872)
**J. CHRISTOPHER MILLS, LLC**                  Hannah Freedman (Fed. ID # 13140)
2118 Lincoln Street                            **JUSTICE 360**
Columbia, SC 29202                             900 Elmwood Avenue
(803) 745-9533                                 Suite 200
                                               Columbia, SC 29201
John H. Blume (Fed. ID # 1360)                 (803) 765-1044
**Cornell Law School**
159 Hughes Hall
Ithaca, NY 14853
(607) 255-1030